IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**CONNIE SUE McLAUGHLIN,**

       **Plaintiff,**

**vs.**                               **CASE NO. 2:15-cv-12919**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security,**

       **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Claim (ECF No. 17), the Commissioner's Brief in Support of Defendant's Decision (ECF No. 20) and Plaintiff's Reply Brief (ECF No. 21).

### Background

On September 8, 2011, Connie Sue McLaughlin, Claimant, applied for disability and disability insurance benefits (DIB) and social security income (SSI), alleging disability beginning August 15, 2011. The claims were denied initially on January 19, 2012, and upon reconsideration on June 28, 2012. Claimant filed a written request for hearing on July 23, 2012. Thereafter, on December 17, 2013, Claimant appeared at a hearing held in Charleston, West Virginia, before an Administrative Law Judge (ALJ). On March 7, 2014, the ALJ denied Claimant's applications for disability under sections 216(i) and 223(d) of the Social Security Act (Tr. at 23). Approximately on May 12, 2014, Claimant requested review of the hearing decision by the Appeals Council (AC) (Tr. at 8). On July 15, 2015, the Notice of Order of Appeals Council stated that it "found no reason

under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review" (Tr. at 1). The ALJ's decision became the final decision of the Commissioner of Social Security (Tr. at 1-3). Thereafter, Claimant filed the instant complaint with this Court for judicial review, objecting to the final decision of the Commissioner, seeking the ALJ's decision be vacated and requesting this matter be remanded to reconsider whether Claimant suffers from a listed impairment (ECF No. 17).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2015). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The

burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2015). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as

>the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>(3)   We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>(4)   When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and

conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date of August 15, 2011 (Tr. at 14). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment borderline intellectual functioning. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1. (Tr. at 16). The ALJ then found that Claimant has a residual functional capacity to perform work at the medium exertional level[1] (Tr. at 18). The ALJ held that Claimant is capable of performing past relevant work as a habitation aide/personal care aid (Tr. at 21). On this basis, benefits were denied (Tr. at 23).

---

[1] The ALJ found that Claimant can frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs. She can occasionally climb ladders, ropes and scaffolds. The Claimant can have frequent exposure to extreme cold and pulmonary irritants including fumes, odors, dusts and gas. Claimant is able to perform simple, routine tasks (Tr. at 18).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

Claimant's Background

Claimant was born on July 25, 1965 (Tr. at 154). She quit school in the seventh or eighth grade.[2] Claimant was previously in physically abusive relationship with her husband (Tr. at 42). She is now divorced and has three children (Tr. at 44). She is still raising her 16 year old daughter with whom she lives with. Claimant has four grandchildren (Tr. at 45). Claimant has a driver's license.

---

[2] Claimant indicated in her Disability Report that she dropped out of school after the eighth grade in June 1981 (Tr. at 170). At the hearing, Claimant testified that she dropped out of school half way through seventh grade (Tr. at 34).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ's conclusion that Claimant can perform her past relevant work or other work which exists in significant numbers in the national economy is not supported by substantial evidence because the ALJ failed to adequately describe Claimant's mental limitations to the vocational expert (ECF No. 17). Claimant argues that the ALJ's conclusion that she did not suffer from an impairment that meets Listing 12.05(C) is not supported by substantial evidence.

Defendant asserts that the ALJ adequately accounted for his step three finding in the residual functional capacity assessment and hypothetical question to the vocational expert (ECF No. 20). Defendant avers that substantial evidence supports the ALJ's determination that Claimant did not meet the criteria for Listing 12.05(C).

Medical Record

This Court adopts the medical record findings asserted by Claimant and by Defendant, to the extent as follows, regarding Claimant's mental impairments (ECF Nos. 17, 20, and 21):

When Claimant filed her claim at the Social Security District Office, on September 8, 2011, the claims representative noted that she had difficulty concentrating. Claimant could not remember names and dates and a friend reminded her often of events she was not remembering and when. (Tr. at 166).

On September 6, 2012, Claimant began treatment with Seneca Health Services for major depression, recurrent, moderate to severe and generalized anxiety disorder, adjustment disorder with anxious and depressed mood secondary to physical illness and/or situational factors. On September 13, 2012, Dr. M. Khalid Hasan gave her a global assessment of functioning rating

of 40 to 45.[3] (Tr. at 426).

Between September 19, 2012 and November 12, 2013, Claimant had nine individual psychotherapy sessions. (Tr. at 460). On January 10, 2013, Dr. Hasan indicated that her major depressive disorder was now in partial remission. (Tr. at 430).

During a psychological consultative examination by Larry J. Legg, M.A., on March 31, 2013, Claimant reported that she completed only the seventh grade and did have "a history of LD [learning disabled] class placement." (Tr. at 246). Mr. Legg administered a Wechsler Adult Intelligence Scale IV which showed that Claimant had a verbal comprehension score of 66, a perceptual reasoning score of 75, a working memory of 71, processing speed of 62 and full scale IQ of 63 (Tr. 2 at 245-246). Mr. Legg believed that the current level of intellectual functioning was valid, "However, given the claimant's self-reported, educational and vocational background, as well as her self-reported history regarding her adaptive behaviors, it is judged that a diagnosis of Mental Retardation would not be appropriate in this case." (Tr. at 246). Mr. Legg diagnosed Claimant with borderline intellectual functioning. (Tr. at 247). Based on a Wide Range Achievement Test – IV, Mr. Legg found that Claimant read at a 3.2 grade level and performed math at a 3.2 grade level, but was unable to spell at even a kindergarten level. (*Id.*)

## Discussion

"RFC represents the most that an individual can do despite his or her limitations or restrictions." *See* Social Security Ruling 96-8p, 1996 WL 374184, *1 (July 2, 1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record,"

---

[3] *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, contains a Global Assessment of Functioning (GAF) Scale. A GAF score of 40 indicates a major impairment in several areas, such as work or school, family relations, judgment, thinking or mood and would be evidenced by an inability to work. A GAF score of 45 would indicate serious symptoms resulting in an inability to keep a job. In the Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders,* the GAF scale has been removed.

8

including "the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." *Id.* at *5. The Ruling requires that the ALJ conduct a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. This function-by-function analysis enables the ALJ to determine whether a claimant is capable of performing past relevant work, the appropriate exertional level for the claimant, and whether the claimant is "capable of doing the full range of work contemplated by the exertional level." *Id.*

Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545, 416.945 (2015). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." *Id.* "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* At *7. The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence in the case record were considered and resolved." *Id.*

In *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p explains how adjudicators should assess residual functional capacity. The Ruling

instructs that the residual functional capacity assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations[4]. It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." *Id.*

In determining a claimant's RFC, the ALJ must consider "'of [the claimant's] medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two" of the sequential analysis. *Id.* at 635. The ALJ must "consider all [the claimant's] symptoms, including pain, and the extent to which [his] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." See 20 C.F.R. §§ 404.1529(a), 414.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [his] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [his] symptoms limit [his] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 414.929(c)(1).

The Fourth Circuit in *Mascio* noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. *Id.* The Fourth Circuit further noted that a *per se* rule requiring function-by-function analysis was

---

[4] The listed functions under Social Security Ruling 96-8p include:
> [T]he claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)"; (2) mental abilities, "such as limitations in understanding, remembering and carrying out instructions and in responding appropriately to supervision, coworkers and work pressures in a work setting"; and (3) other work-related abilities affected by impairments "such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses and impairment(s) which impose environmental restrictions." *Mascio*, 780 F.3d at 636 n.5.

inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2 d Cir. 2013)); *see also*, *Ashby v. Colvin*, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

Consultative examiner Larry Legg, M.A., evaluated claimant on January 9, 2012, and diagnosed borderline intellectual functioning. Claimant presented to Mr. Legg asserting that she was experiencing problems with her memory (Tr. at 243). She reported that she "double dosed" on medications accidentally due to her memory. *(Id.)* Claimant reported that she frequently loses objects and cannot find them. Mr. Legg interviewed Claimant and found that Claimant's concentration was moderately deficient based on a WAIS-IV test that Mr. Legg administered (Tr. at 242-250). The ALJ did not state how much weight he gave the opinion of Mr. Legg.

State agency consultant, Philip E. Comer, Ph.D., performed a Mental Residual Functional Capacity Assessment (MRFCA) on January 17, 2012 (Tr. at 266-268). Dr. Comer found that Claimant has moderate limitations in: the ability to understand, remember and perform and carry out detailed work or work with detailed instructions; the ability to pay attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to respond to changes in the work place (Tr. at 267). On May 17, 2012, Paula J. Bickham, Ph.D., reviewing psychologist, reviewed and confirmed Dr. Comer's MRFCA (Tr. at 352). The ALJ gave "great weight" to the

opinions of Dr. Comer and Dr. Bickham based on their "program knowledge and their specialty in mental impairments" (Tr. at 21).

Claimant sees a psychiatrist at Seneca Mental Health who is treating her for a mood disorder (Tr. at 43). The ALJ stated that "The undersigned notes that records from Seneca Health Services, Inc. indicated that the claimant had an overall normal mental status examination with intact cognition and fair insight, problem solving and judgment" (Tr. at 15-16). The ALJ did not further discuss the medical records from Seneca Health Services, Inc. or the opinion of Claimant's treating psychiatrist M. Khalid Hasan, M.D. (Tr. at 425-433).

Dr. Hasan's clinical documentation dated September 13, 2012, states that "Matters are further compounded by numerous medical problems including overactive thyroid, which was radiated resulting in the development of hypothyroidism affecting her memory. [Claimant] stated that she cannot concentrate" (Tr. at 425). Dr. Hasan's treatment plan provided that "If memory continues to be a problem, it will be addressed" (Tr. at 426). The ALJ failed to state how much weight she gave the opinion of Claimant's treating psychiatrist Dr. Hasan.

Claimant testified to experiencing memory loss and gave the example that she will "go across the floor thinking I'm going to get something and when I get across the floor I'll forget, and go back and sit down. And I'll do this four or five times a day" (Tr. at 49). Claimant testified that she has "forgetfulness problems."

The ALJ held the following:

> In order to determine the claimant's residual functional capacity, the undersigned has considered the functional limitations resulting from all of the claimant's medically determinable impairments, including the aforementioned nonsevere impairments (20 CFR 404.1545 and 416.945). The evidence does not support a finding of any additional functional limitations other than those included in Finding 5[5] below (Tr. at 16).

---

[5] Under finding 5 of the sequential analysis the ALJ held that Claimant has the residual functional capacity to perform

The ALJ did not address the above contradictory evidence in the record when determining Claimant's residual functional capacity. The ALJ failed to make a logical bridge between the evidence and her conclusion. The ALJ did not weigh the opinions of Mr. Legg or Claimant's treating psychiatrist Dr. Hasan. Additionally, the ALJ did not provide a narrative discussion on why she gave Dr. Comer and Dr. Bickham's opinions "significant weight" and she did not adopt both doctors' findings of Claimant having moderate limitations in concentration, persistence and pace. Therefore, the undersigned respectfully recommends the District Judge hold that inadequacies in the ALJ's analysis frustrate meaningful review.

## Listing 12.02(C)

The Fourth Circuit has held that an ALJ providing no basis for his conclusion that a listing was not met, failed to apply the requirements of the listing to the medical record. *Radford v. Astrue*, 2012 WL 3594642, at *1 (E.D. N.C. Aug. 20, 2012). The ALJ denied Radford's claim finding that although he had two severe impairments – lumbar degenerative disc disease and chronic obstructive pulmonary disorder – neither qualified as an impairment under Listings 1.04A (disorders of the spine) or 3.02 (chronic pulmonary insufficiency), and neither constituted any other type of impairment listed under sections 1.00 (musculoskeletal), 3.00 (respiratory system), 11.00 (neurological), and 13.00 (malignant neoplastic diseases). The Fourth Circuit found that "The ALJ provided no basis for his conclusion, except to say that he had 'considered, in particular,' the listings above, and had noted that state medical examiners had also 'concluded after reviewing the evidence that no listing [was] met or equaled.'" See *Radford v. Colvin,* 734

---

medium work as defined in CFR 404.1567(c) and 416.967(c), except she can frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs. Claimant can occasionally climb ladders, ropes and scaffolds. Claimant can have frequent exposure to extreme cold and pulmonary irritants including fumes, odors, dusts and gas. She is also unable to perform simple, routine tasks (Tr. at 18).

13

F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." (citation omitted)) *see also Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (concluding that an ALJ is required to build an "accurate and logical bridge" between the evidence and his conclusions (citation omitted)).

In the present case, Plaintiff seeks disability pursuant to Listing 12.00, among other listings. Mental disorders are demonstrated under Listing 12.02 by satisfying the requirements of paragraphs A and B or paragraph C. Listing 12.02(C), requires Claimant to demonstrate the following:

> Medically history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medical or psychosocial support and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more year's inability to function outside a highly supportive living arrangement, with an indication of continued need for such an accident. *See* 12.02(C).

The ALJ's full discussion on whether Claimant satisfied the criteria under Listing 12.02(C) states "The undersigned has also considered whether the 'paragraph C' criteria of 12.02 are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria" (Tr. at 17). This general finding that Claimant did not demonstrate a requirement to satisfy Listing 12.02(C) is not supported by substantial evidence. Such a generalization lacks reasoning and an explanation.

An ALJ's failure to explain his reasoning precludes a court from undertaking a 'meaningful review' of his findings. *See Radford*, 734 F.3d at 295 If the reviewing court has no way of evaluating the basis for the ALJ's decision, then "the proper course is to remand to the agency for additional investigation or explanation." *Id*. at 295 (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989). If the reviewing court has no way of evaluating the basis for the ALJ's decision, then "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Lights Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985).

Like *Radford*, the ALJ in the present matter summarily concluded that Claimant's impairments did not meet or equal a listed impairment, but failed to provide an explanation other than saying the Listing requirement was not met. This insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (reversing and remanding when ALJ "failed to compare [the claimant's] symptoms to the requirements of any of the four listed impairments, except in a very summary way"). Accordingly, the undersigned respectfully recommends that the District Judge find that ALJ did not properly explain why Claimant did not satisfy the criteria for paragraph C under Listing 12.02.

Conclusion

For the reasons stated above, the undersigned respectfully recommends that the District Judge find the ALJ failed to: provide a narrative discussion addressing contradictory evidence pursuant to *Mascio*, give weight to medical and psychological opinions on the record and provide any analysis of her finding that Claimant did not satisfy the criteria under paragraph C of Listing 12.02 on organic mental disorders.  This Court makes no recommendation as to Claimant's remaining arguments.  These issues may be addressed on remand. The undersigned respectfully recommends that the presiding District Judge remand this matter for further analysis and consideration.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Brief in Support of Claim (ECF No. 17) to the extent Plaintiff seeks remand, **DENY** the Commissioner's Brief in Support of Defendant's Decision (ECF No. 20), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to District Judge John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: January 24, 2017

Dwane L. Tinsley
United States Magistrate Judge